# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE TANIS,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>SOUTHWEST AIRLINES, CO. *et al*,<br><br>　　　　　　　　Defendants. | Case No. 18-cv-2333-BAS-BGS<br><br>**ORDER:**<br>**(1) GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br>**(2) DENYING PLAINTIFF'S MOTION FOR TRIAL AND LIMITED DISCOVERY**<br><br>**[ECF Nos. 9, 13]** |

Presently before the Court is Defendant Southwest Airlines, Co.'s Motion to Compel Arbitration. ("Mtn Compel," ECF No. 9.) Plaintiff Suzanne Tanis filed an Opposition to the Motion, ("Opp'n," ECF No. 11), and Defendant filed a Reply in support of the Motion, ("Reply," ECF No. 12). Also before the Court is Plaintiff's Motion for Trial and Limited Expedited Discovery, ("Mtn Trial," ECF No. 13). Defendant filed an Opposition to the Motion, (ECF No. 14), and Plaintiff filed a Reply in support of the Motion, (ECF No. 15).

The Court finds the Motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** Defendant's Motion to Compel Arbitration and **DENIES** Plaintiff's Motion for Trial and Discovery.

## I. BACKGROUND

Plaintiff Suzanne Tanis filed an individual and class action complaint in state court, which Defendant removed to this Court. (*See* "Compl.," ECF No. 1-4, at 9.) Plaintiff began working for Defendant as a non-exempt Customer Service Agent in October 2015. ("Tanis Decl.," ECF No. 11-2, ¶ 3.) Plaintiff became a Field Instructor, which is classified as an exempt employee, in June 2016. (*Id.* ¶ 4.) In sum, Plaintiff alleges she and other similarly situated employees were improperly classified as exempt employees, and therefore alleges Defendant engaged in wage and hour violations. Defendant filed the present Motion to Compel Arbitration soon after it filed its answer. After briefing was complete on Defendant's motion, Plaintiff filed a motion requesting a jury trial or limited discovery.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA permits a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements may be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration

or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).

Section 4 of the FAA provides, in pertinent part:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . . Where such an issue is raised, the party alleged to be in default may . . . on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury . . . .

9 U.S.C. § 4. "When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Chavez v. Bank of Am.*, No. C 10-653 JCS, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011) (citation omitted). If there is a genuine issue of material fact as to whether the parties formed an agreement to arbitrate, a court must first resolve that factual dispute before it can, as a matter of law, compel the parties to submit their dispute to arbitration. *Three Valleys*, 925 F.2d at 1140–41 (quotation marks and citation omitted).

### III. ANALYSIS

In the two pending Motions, the Parties present competing requests: Defendant requests the Court compel arbitration of this matter, and Plaintiff requests a jury trial or permission to engage in discovery on the existence of the arbitration agreement.[1]

---

[1] Plaintiff's request for a jury trial is timely because she requested it in her opposition to Defendant's Motion to Compel. *See Castillo v. Lowe's HIW, Inc.*, No. C13-4590 TEH, 2013 WL 12143002, at *4 (N.D. Cal. Dec. 2, 2013) ("If Plaintiff desired a jury trial on this issue, he was required to demand one in his opposition to Defendant's motion to compel arbitration or prior to the date the opposition brief was due.").

Defendant argues Plaintiff's Motion for Trial is simply an extension of her opposition and is improper. (ECF No. 14, at 3–4.) Nothing requires Plaintiff to only request trial in an opposition and she is not prevented from filing a motion. The Court has reviewed both motions and all briefing simultaneously, therefore, the method of presentation of those arguments is immaterial. The Court

### A. Plaintiff's Challenge to Arbitration

Challenges to arbitration agreements fall into two categories: (1) those challenging the arbitration provision, and (2) those challenging the contract as a whole, such as based on fraud or illegality. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1270 (9th Cir. 2006). If the "crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision" then it must be determined by the arbitrator. *Nagrampa*, 469 F.3d at 1263–64. If the crux of the complaint "is not the invalidity of the contract as a whole, but rather the arbitration provision itself" then it must be determined by the court. *Id.* Further, "challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (citation omitted); *Flores v. Jewels Mktg. & Agribusiness*, No. F 07-334 AWI WMW, 2007 WL 2022042, at *5 (E.D. Cal. July 9, 2007) (holding if the challenge is as to "whether a contract containing an arbitration clause was ever formed or ever existed, e.g. a contention that a purported contract is void as opposed to merely voidable" then this must be determined by the court (citation omitted)).

Plaintiff contests that she ever entered into an arbitration agreement. (Opp'n 11.) In this case, there is not a standard "contract as a whole" with an embedded arbitration clause because Plaintiff only had to click a box to consent that she read certain policies, one of which contained Defendant's arbitration program. Plaintiff is therefore not challenging a contract but challenging the validity of the arbitration agreement. This is an issue for the Court.

### B. Arbitration Agreement Background

Defendant uses an intranet site called "SWALife" to distribute certain

---

therefore declines Defendant's request to strike Plaintiff's Motion. (*See id.* at 5.)

employment policies to its employees. ("Vasquez Decl.," ECF No. 9-3, ¶ 3.)[2] If Defendant makes an announcement through SWALife, the announcement "appears on the main page of SWALife when an employee logs-on [sic] to the system." (*Id.*) The announcement "provides employees with electronic links to the written policies and instructs them to 'CHECK THE BOX' to acknowledge that they have received, read and reviewed the policies and that they understand and agree to comply with them." (*Id.*) The announcement appears on the main page of SWALife until the employee electronically signs the acknowledgement. (*Id.*) But, employees only have 14 days to sign the acknowledgement. (*Id.*)

When an employee checks the box and submits her acknowledgement, "an electronic record is created in a database with the employee's name, employee identification number, and the date and time that the employee executed the acknowledgement. Southwest maintains this database in the ordinary course of business." (*Id.* ¶ 4.) Mr. Vasquez ran a report in the secure database using Plaintiff's employee number. He attached an exhibit which he says "shows that on August 14, 2017, Ms. Tanis executed the 2017 Southwest Airlines Q3 Acknowledgement, which is abbreviated [on the exhibit] as '2017 Q3 ADR COE ITP.'" (*Id.* ¶ 6; ECF No. 9-4.) The Q3 acknowledgment included Defendant's Alternative Dispute Resolution ("ADR") Program. (Vasquez Decl. ¶ 6) Mr. Vasquez attached the Q3 Acknowledgment that Plaintiff saw and executed. (*Id.*; ECF No. 9-6.) The Acknowledgment does not show Plaintiff's signature, but Mr. Vasquez states when Plaintiff logged into SWALife, the Announcement would be displayed and below it, the page would say, "I, Suzanne Tanis, have read, reviewed, and been given the opportunity to review, and I have received" the ADR Program. (ECF No. 9-6.)[3]

---

[2] Mr. Vasquez is an Analyst on the Digital Workplace Solutions team in Defendant's Communications and Outreach Department. He makes his declaration based on personal knowledge and review of business records that Defendant maintains in the ordinary course of business. (Vasquez Decl. ¶ 1.)

[3] Mr. Vasquez attached a copy of his own SWALife page which shows the box that appears for

Plaintiff was not required to sign anything, but was to check a box affirming receipt of the policy.  Plaintiff also had the option to click on a link to download and view the ADR Program.  (*Id.*)

In her declaration, Plaintiff does not directly address whether or not she clicked the box to confirm that she read or received the ADR Program.  ("Tanis Decl.," ECF No. 11-2.)  She declares she recollects she could "bypass SWALife Announcements" whenever she logged in and there was "no requirement" that she must check any box before continuing to the home page.  (*Id.* ¶ 8.)[4]  She therefore argues she may have not been the one who accessed the SWALife system on August 14, 2017 and also contests the validity of Defendant's records.  (Opp'n 13.)  She further states if she did check a box, she "did not understand [she] was entering into a binding contract." (Tanis Decl. ¶ 9.)  Finally, Plaintiff objects to the admission of the documents attached to Mr. Vasquez's declaration.  (Opp'n 12.)

### C. Evidentiary Objections

Plaintiff argues the documents submitted by Defendant are inadmissible. Exhibit 1 is the report Mr. Vasquez ran using Plaintiff's employee number which he says shows when and if Plaintiff agreed to certain SWALife announcements.  (ECF No. 9-4.)  Exhibit 2 is Defendant's ADR Program, which Defendant states would open if Plaintiff clicked the hyperlink on the SWALife announcement.  (ECF N. 9-5.)  Exhibit 3 is purportedly the SWALife announcement Plaintiff would have seen when she logged into SWALife.  (ECF No. 9-6.)

Plaintiff objects to Exhibit 1 as lacking foundation and to Exhibits 2 and 3 as unauthenticated and as hearsay.  (Opp'n 11–12.)  Further, Plaintiff objects to Exhibit

---

him when he logs into the website (i..e, "I, Vincent Vasquez . . . .").  He states this language would appear for all employees with their own name.

[4] This appears to be true, given that Mr. Vasquez declares that the announcement will appear on the user's main page for 14 days until they sign it. It is unclear what happens if the employee does not log in to SWALife during that time. The Court assumes it is possible an employee would never see an announcement if she did not log in for those 14 days.  But Plaintiff does not assert that she did not log in for any two-week period.

3 because Defendant admittedly altered it by adding Plaintiff's name on the bottom. (*Id.* at 12.)[5]

### 1. Authentication

To authenticate a piece of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. Here, Mr. Vasquez declares that the documents are what he claims them to be based on his personal knowledge as an Analyst on Defendant's Digital Workplace Solutions team. This is sufficient to authenticate the documents and lay a foundation; the Court **OVERRULES** Plaintiff's objections on this ground.

### 2. Hearsay

Plaintiff argues Exhibit 2, the arbitration agreement, is inadmissible hearsay. (Opp'n 12.)

Evidence is inadmissible under the hearsay rule if it is a statement made outside of court that is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The "business record" exception allows hearsay to be admitted as evidence if: (1) it was regular business practice to make that record; (2) it was kept in the regular course of business; (3) it was made by a person with knowledge; and (4) it was made at or near the time the event recorded. *Clark v. City of Los Angeles*, 650 F.2d 1033, 1036–37 (9th Cir. 1981). The arbitration agreement is a written statement, made outside of court and is offered to prove the truth of the matter asserted—that the Parties agreed to arbitrate. The agreement is therefore hearsay. However, the Court finds that the business records exception applies. It is in Defendant's regular practice to arbitrate with its employees, and it is Defendant's practice to keep its arbitration agreements on its SWALife system in the regular

---

[5] The Court disregards this objection because Mr. Vasquez admits he altered the document by pasting Plaintiff's name on the bottom to signify the time and date that Defendant's records indicate Plaintiff signed the document. Mr. Vasquez is not saying that Plaintiff's signature and time and date stamp would appear on the actual announcement that she saw.

course of business. (Vasquez Decl. ¶¶ 1, 4.) Further, Mr. Vasquez has established that he is a person with knowledge of Defendant's system, and the arbitration agreement was made at or near the time that Plaintiff "checked the box" on the SWALife announcement. Therefore, the exhibit is admissible as a business record. *See also Trevino v. Acosta, Inc.*, 17-cv-6529 NC, 2018 WL 3537885, at *4 (N.D. Cal. July 23, 2018) (finding an arbitration agreement to be a business record); *Martinez v. Leslie's Poolmart, Inc.*, 8:14-cv-1481-CAS (CWx), 2014 WL 5604974, at *1 n.3 (C.D. Cal. Nov. 3, 2014) (same).

Plaintiff further argues that Exhibit 3, the SWALife announcement, is hearsay. Mr. Vasquez states Exhibit 3 is "an exemplar of the 2017 Southwest Airlines Q3 Acknowledgement form that Southwest circulated to all employees and that Ms. Tanis executed." (Vasquez Decl. ¶ 7.) Mr. Vasquez declares that all employees would see the announcement shown on Exhibit 3 when they logged into the website. The exhibit is not hearsay because it is not being offered for the truth of any statement therein, but instead offered to show what any person loading that page at that point in time would have seen. *See Farmasino, Inc. v. Farmasino Pharm. (Jiangsu) Co., Ltd*, No. 5:15-cv-1877-SVW-DTB, 2016 WL 7655740, at *4 (C.D. Cal. June 20, 2016) (finding the same about a snapshot of a webpage); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp.2d 1146, 1155 (C.D. Cal. 2002) (holding images and text on websites "are not statements at all—and thus fall outside the ambit of the hearsay rule"). The exhibit is admissible.

All of Plaintiff's objections are **OVERRULED**.

### D. <u>Authentication of Plaintiff's Signature</u>

Plaintiff contests whether she was the one who checked the box affirming receipt and agreement to arbitration. It is undisputed that no one saw Plaintiff view the document on SWALife, and Plaintiff does not admit that she did so, thus, no witness can attest that they have personal knowledge Plaintiff checked the box on the announcement.

While the Internet "has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). "Questions of contract formation are questions of state law." *Cordas v. Uber Tech., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017). Mutual consent is a necessary element to contract formation. Cal. Civ. Code § 1550. Consent to an arbitration agreement can be express or implied in fact. *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000). Additionally, California law recognizes the validity of electronic signatures, stating "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code § 1633.9(a). "[T]he employer bears the burden of proof to authenticate a signature once the employee contests the validity of the arbitration agreement." *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (citing *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th. 836 (2014)).

"Under ESIGN [the Electronic Signatures in Global and National Commerce Act], electronic records and signatures that are in compliance with ESIGN are legally binding." *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 731 (N.D. Cal. 2012) *aff'd*, 549 F. Appx. 692 (9th Cir. 2013); *see also Small Justice LLC v. Xcentric Ventures LLC*, No. 13-cv-11701, 2014 WL 1214828, at *4 n.2 (D. Mass., Mar. 24, 2014) ("The E–Sign Act, 15 U.S.C. § 7001, recognizes that the click of a button online can replace an actual signature."). Indeed, "[c]ourts have long upheld agreements where a contract was formed when a plaintiff clicked on a button to assent to an agreement in which the terms themselves are accessed by a hyperlink." *Tagliabue v. J.C. Penney Corp.*, No. 1:15-cv-1443-SAB, 2015 WL 8780577, at *4 (E.D. Cal. Dec. 15, 2015 (citing *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146 (N.D. Cal. 2015)). In *Espejo v. Southern California Permanente Medical Group*, to

authenticate an electronic signature, the defendant submitted a declaration by its systems consultant who detailed the company's "security precautions regarding transmission and use of an applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement." 246 Cal. App. 4th 1047, 1062 (2016). The systems consultant concluded that the signature "could only have been placed" on the agreement by someone using the plaintiff's unique user name and password. *Id.* The court found that these details established that the electronic signature was "the act of" the plaintiff. *See also Mohamed v. Uber Technologies, Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015) (affirming contract where plaintiff had opportunity to review relevant terms of hyperlinked agreements, the existence of the relevant term was conspicuous, and the plaintiff was required to click through the screen to continue using the application and also click "Yes, I Agree").

Here, Mr. Vasquez declares that all employees have a unique username and password to log onto SWALife. (Vasquez Decl. ¶ 2.) Plaintiff does not attest that anyone else had access to this information; she only speculates that Defendant *may* have had a list of every employee's username and password. (Opp'n 13.)[6] This unsupported assertion is contradicted by Mr. Vasquez's declaration where he states employees are to treat the username and password as confidential and "may not share their passwords with others or allow others to access their SWALife accounts." (Vasquez Decl. ¶ 2.) Someone using Plaintiff's username and password logged into Plaintiff's SWALife account and clicked the box. The evidence shows this action could only have been done by Plaintiff.

Further, Plaintiff does not dispute in her declaration that she checked the box and does not even state that she cannot recall whether or not she checked the box.[7]

---

[6] Although she does not say so, Plaintiff is therefore implying that Defendant logged into her SWALife account and checked the box for her.

[7] Of course, Plaintiff's opposition argues that Plaintiff "did not sign, electronically or otherwise,

She only generally declares that she "could bypass" the announcements, and "if" she checked the box, she did not understand what she was doing. (*See generally* Tanis Decl.) Had Plaintiff submitted a declaration denying the fact that she checked the box, this may have created a dispute. *See GIB, LLC v. Salon Ware, Inc.*, 634 F. App'x. 610 (9th Cir. 2016) (finding the plaintiff "raised a genuine issue of material fact by submitting a sworn declaration denying that the parties had entered into a written agreement, and email correspondence between the parties suggesting that they had a different, more informal, arrangement"). Plaintiff failed to present a disputed material fact and the undisputed evidence demonstrates that Plaintiff did in fact check the box affirming that she had read and received the notification that she was submitting to arbitration. *See Klein v. Delbert Servs. Corp.*, No. 15-cv-432-MEJ, 2015 WL 1503427, at *5 (N.D. Cal. Apr. 1, 2015) (finding checking a box is sufficient to establish plaintiff's acceptance of the terms of the arbitration provision). Therefore, Defendant has met its burden of proving that the checking of the box was "the act of" Plaintiff and the signature is authenticated.

Further, the evidence shows that Plaintiff's checking of the box demonstrated her agreement to arbitration. When an employee logged into SWALife during the period when the announcement was available, the page first informed the user about the ADR program, and stated "by checking the box below, you are acknowledging you have received a copy of the ADR Program" and reviewed it. (ECF No. 9-6.) The page then clearly directed the employee to: "CHECK THE BOX BELOW to consent to electronic delivery, acknowledge receipt, and continue to the SWALife home page." The box appeared to the left of the statement: "I, [name], have read, reviewed, and been given the opportunity to review and I have received the:" the notification of the arbitration agreement. (*Id.*) The user could then click the

---

any type of arbitration agreement." (Opp'n 6.) But Plaintiff does not state in any declaration or affidavit that she did not check the box on the SWALife announcement, or that she did not see the arbitration agreement.

hyperlink to the ADR Program if she wished to do so. The evidence demonstrates Plaintiff checked the box after acknowledging the ADR agreement. *See Tagliabue*, 2015 WL 8780577, at *4 (finding the plaintiff agreed to arbitrate when the page "directed Plaintiff to click on the link to the arbitration agreement and read it before signing" and "clearly informed Plaintiff of the purpose of the document"). Therefore, Plaintiff consented to arbitration.

### E. <u>Validity of the Arbitration Agreement</u>

Plaintiff argues if she did consent to the arbitration agreement, her consent was invalid because the agreement was inconspicuous. (Opp'n 13.)

"[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972.) "[W]hen the writing does not appear to be a contract and the terms are not called to the attention of the recipient . . . no contract is formed with respect to the undisclosed term." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001). But this is not the case here. The SWALife Announcement is a total of four paragraphs, the second of which is titled "Alternative Dispute Resolution Program." In sum, the paragraph provides that "by checking the box below, you are acknowledging that you have received a copy of the ADR Program, which includes a provision requiring binding arbitration of certain types of claims, that you have reviewed the ADR Program . . . and that you agree to abide by the ADR Program." (ECF No. 9-6.) The employee may also click on the hyperlink to the policy. This is clear and disclosed language and is not "hidden" in the Announcement. Simply because Plaintiff may not have clicked the hyperlink (and was not required to before checking the box), (*see* Opp'n 15), does not make its existence hidden or unclear. *See Mohamed*, 109 F. Supp. 3d at 1198 (holding it is irrelevant whether a party actually reads the contract by clicking on the available link, "so long as the individual

has a legitimate *opportunity* to review" the contract). The agreement to arbitrate is valid.

### F. <u>Whether Plaintiff's Dispute is Encompassed in the Terms</u>

Plaintiff argues the ADR Program does not apply to her because she is not an "ADR Employee." (Opp'n 16.) The ADR Program provides: "By continuing employment with Southwest Airlines after the effective date of this ADR Program, or by accepting an offer of employment with Southwest Airlines after the effective date of this ADR Program" the employee agrees to arbitrate his or her covered claims. (ECF No. 9-5, ¶ 2.) The effective date is listed as July 24, 2015. Plaintiff argues she did not "continue" employment after July 24, 2015 because did not begin work until October 2015. (Opp'n 18.) But Plaintiff "accept[ed] an offer of employment" after the effective date, thus, she is an ADR Employee per the terms of the Agreement. Further, the fact that she did not receive an arbitration agreement upon hire is immaterial, (Tanis Decl. ¶ 5); she received the agreement and consented to it later through the SWALife Announcement.[8] Plaintiff is an "ADR Employee" and her claims are covered by the arbitration agreement.[9]

In sum, there is no dispute of material fact as to whether the Parties formed an

---

[8] As Defendant points out, Plaintiff did not receive the ADR Program upon hire because she began as an a non-exempt Customer Service Agent subject to a Collective Bargaining Agreement ("CBA"), and the ADR Program therefore did not apply to her. (Reply 8.) But Plaintiff became a Field Instructor in June 2016, a position not covered by CBA, and therefore, (albeit over a year later), Defendant asked Plaintiff to agree to the ADR Program.

[9] Defendant also requests the Court hold that Plaintiff may not proceed on a class-wide basis and may present her individual claims only. (Mot. Compel 2.) But the arbitration agreement specifically provides: "All disputes concerning the scope and/or coverage of a claim or a party must be resolved by the Arbitrator rather than a court." (ECF No. 9-5, at 3.) Whether a class-wide claim may be presented and/or whether it must be arbitrated involves a determination of the "scope" of the arbitration agreement. Thus, the arbitrator must determine whether the agreement covers any class-wide claims. *See Aceves v. Autonation, Inc.*, 317 F. App'x 665, 666–67 (9th Cir. 2009) (finding a provision that contains such language "empowers the arbitrator to decide questions of scope in the first instance"). The Court therefore **DENIES** Defendant's request to dismiss all class claims.

agreement to arbitrate. Therefore, the Court need not order a jury trial or allow the Parties to engage in discovery on the issue. *See Concat LP v. Unilever, PLC,* 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (indicating that, where a motion to compel arbitration "is opposed on the ground that no agreement to arbitrate was made," a court should apply a standard similar to the Rule 56 summary judgment standard—i.e., the court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise, and "[o]nly when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement").

## IV. CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS IN PART** Defendant's Motion to Compel Arbitration and **ORDERS** the Parties to proceed to arbitration but **DENIES** Defendant's request to dismiss Plaintiff's class claims, (ECF No. 9);

(2) **DENIES** Plaintiff's Motion for Discovery and Jury Trial, (ECF No. 13);

(3) **STAYS** this action as to all parties and all claims. *See* 9 U.S.C. § 3;

(4) Directs the Clerk of the Court to **ADMINISTRATIVELY CLOSE** this action. The decision to administratively close this action pending the resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

**IT IS SO ORDERED.**

**DATED: March 11, 2019**

Hon. Cynthia Bashant
United States District Judge